[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This seven year marriage of the parties was dissolved by the court (Hiller, J.) on October 26, 1999. At that time orders were entered as to custody and visitation. By stipulation, . all issues as to financial matters were reserved for determination at a later time. This court, thereafter, held hearings over several days between June 1, 2000 and June 21, 2000.
The parties were married in Stamford, Connecticut on April 4, 1992. They have two children. They are Danielle, born January 22, 1993 and Thomas, born May 25, 1994. The plaintiff commenced the dissolution of marriage action on November 11, 1996. The judgment entered in 1999 provided for joint legal custody of the children with physical custody to CT Page 11352 the defendant. A visitation schedule was ordered at that time.
The plaintiff, age 40, reported no health problems. He is employed as a stationary engineer with the Shubert Organization in New York City and holds a responsible position.
The defendant, age 41, except for occasional back problems, enjoys good health. She has worked throughout the marriage and has held a real estate broker's license for several years. She is currently unemployed. In addition to working outside the home, she has been a homemaker and dedicated parent.
The marriage was dissolved on the basis of irretrievable breakdown. The plaintiff left the marital home in November, 1996 without any prior notice to the defendant. Although the evidence indicates that both parties contributed to the failure of their marriage, the court finds the plaintiff must be assessed the greater responsibility.
After the present action was commenced, the plaintiff filed a Chapter 7 voluntary petition in bankruptcy in the Federal District Court, Southern District of New York, on September 15, 1998. (Case No. 98-46564 (PCB)). The plaintiff listed on his schedule of assets his interest in the marital residence in which title was held in the names of the plaintiff and his wife, the defendant, as joint tenants, with rights of survivorship. A trustee in bankruptcy was appointed. The trustee has elected not to seek to intervene in this dissolution action.
The filing of a bankruptcy petition creates an estate under Code section 541, which consists essentially of all legal or equitable interests of the debtor in property as of the commencement of the case.11 U.S.C. § 541. The debtor's interest in property which is jointly owned with a non-debtor spouse therefore becomes property of the bankruptcy estate upon the filing of a bankruptcy petition. Under28 U.S.C. § 1334 (d), the district court, and hence the bankruptcy court, as a unit of the district court, has exclusive jurisdiction over all property of the estate. Bankruptcy Code sections 362(a)(1) and (3) operate as an automatic stay of judicial proceedings to recover prepetition claims against the debtor, and of acts to exercise control over property of the estate. Thus the filing of a bankruptcy petition stays equitable distribution in a dissolution of marriage case of a debtor's interest in marital assets. However, other aspects of a divorce case, such as the dissolution of marriage, child custody issues, and collection of alimony, maintenance and support from postpetition earnings in a Chapter 7 case, are not stayed. (Code section 362(b)(2)).
At this court's request, counsel for the parties jointly filed an CT Page 11353 application in the United States Bankruptcy Court, Southern District of New York, seeking that court to abstain from determining the property interests of the debtor and non-debtor spouses in the assets in which the debtor has a legal or equitable interest. Further, they requested that the Bankruptcy court grant a relief from stay and defer to this state court of Connecticut to determine such interests under principles of equitable distribution in the pending dissolution of marriage proceedings.
On September 5, 2000, the Bankruptcy Court, (Beatty, J.) entered an order approving the stipulation entered into between the trustee of the plaintiff, debtor, and Bianca Romano, the plaintiffs spouse and present defendant, that the automatic stay pursuant to section 362 of the Bankruptcy Code in the pending Chapter 7 case be modified so as to allow the divorce action pending between the Debtor and Ms. Romano in the Superior court, State of Connecticut at Stamford (the present action) to proceed to the point of judgment and partition including, but not limited to, any allocation of the Debtor's interest in the marital real property located at 79 Shaker Road, New Canaan, Connecticut; and that the Bankruptcy Court, shall abstain pursuant to section 305 of the Bankruptcy Code from determining the property interest of the debtor and spouse under principles of the equitable distribution matrimonial laws of the State of Connecticut, and will defer to the Divorce Court for such determination.
Pursuant to the further orders of Judge Beatty, a copy of her memorandum of decision of October 12, 1999 declining to approve application for sale of certain property together with a copy of the stipulation approved on September 5, 2000 were delivered to this court.
This court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-81, 46b-82, 46b-84 and 46b-62
in determining the interests of the parties in their assets and liabilities. The orders that follow reflect the court's conclusions as to what is an equitable distribution under the facts of this case.
The following orders may enter:
(1) MARITAL RESIDENCE — 79 SHAKER ROAD, NEW CANAAN, CT
The marital residence of the parties was purchased in 1995 for $332,000. The defendant contributed $65,000 to the purchase from personal funds plus $55,000 by a loan from her mother. The plaintiff contributed $10,000 from his personal funds and another $10,000 borrowed from his father. The balance of the purchase price was obtained by a mortgage loan to both parties. Within one year thereafter, the plaintiff permanently CT Page 11354 left the marital residence.
Both parties presented expert witnesses to establish their claims of the value of the residence. The plaintiffs expert testified that the fair market value of the property as of March 13, 2000 to be $545,000. The defendant's expert valued the property at $460,000 as of May 27, 2000.
The defendant also testified as to the fair market value of her home. She has held a real estate broker's license for eighteen years and has personal knowledge of the condition of the property. She listed several problems that would diminish the value of the home if not repaired prior to sale. The defendant's opinion was that the fair market value presently is between $385,000 and $395,000.
The court finds the fair market value of the residence to be $460,000. The plaintiffs appraiser did not inspect the interior of the property, as the defendant's appraiser did. This evaluation may be slightly optimistic if all problems exist as described by the defendant. They involve the septic system, heating system and appliances that are inoperable.
Outstanding liens against the property include a mortgage, with an approximate balance of $188,000; real property taxes, with approximately $17,000 due and a mortgage against the defendant's interest, due her mother, in the amount of $55,000 plus accrued interest since 1995.
As to the apportionment of the interests in the family residence, the following factors were significant considerations:
 (1) Sources and amounts of money contributed to the purchase by each party including loans from parents;
 (2) Defendant's payment from personal funds in the amount of $17,000 to compromise a mortgage debt of $33,000 on a home owned by the plaintiff prior to their marriage, thereby, enabling the plaintiff to sell that home and be released from a debt of $33,000;
 (3) The plaintiffs closing out an annuity account in the amount of $11,500 shortly before leaving the defendant and using the funds for his own purposes;
 (4) Causes of the breakdown of the marriage;
 (5) Lack of any other assets to provide the defendant CT Page 11355 and minor children any security of having a shelter during the minority years of the children;
 (6) The substantial debts the defendant is left with including repayment of money required to buy the residence and a portion of income taxes due for past years. Weighing all these factors, the court concludes that the defendant is entitled to the entire ownership of the marital residence, subject to the outstanding lending institution mortgage, outstanding real property taxes and the mortgage held by the defendant's mother.
 The plaintiff shall within thirty days transfer to the defendant by quit claim deed the plaintiffs entire interest in the marital residence located at 79 Shaker Road, New Canaan, Connecticut, subject to the outstanding mortgages and property tax liens which the defendant shall assume and pay and indemnify and hold harmless the plaintiff from any liability thereon. In the event the plaintiff fails to execute a deed within the prescribed period, title to the plaintiffs interest in the property shall pass to the defendant pursuant to the provisions of Section 52-22 of the General Statutes.
(2) OTHER ASSETS
 A. Awarded to plaintiff:
 1. All clothing, personal effects and furniture currently in his possession;
 2. The 1995 Ford pickup;
 3. Checking and savings accounts as listed on his financial affidavit dated May 25, 2000 which indicate a total of $237.00;
 4. Shearson/Lehman/Smith Barney account with an estimated balance of $159.00;
 5. Glen Terrace, joint escrow account of $1,600;
6. Pension in the Federal Employee Credit Union. CT Page 11356
 The plaintiff reports that he owns a vested interest in this pension and at age 65 he will receive the sum of $781 per month. He presented no evidence of the present value of this asset other than stating on his financial affidavit an "estimated current value @ 5% discount" of $23,375. The plaintiff has failed to persuade the court of the accuracy of his valuation.
 However, in view of the fact approximately one-half of the pension was earned prior to the marriage of the parties, the amount of the monthly benefits, the length of this marriage and other orders entered, the court finds it appropriate that the plaintiff be awarded his entire pension benefits.
 (7) All Federal and State Income tax refunds for 1998 and 1999.
 B. Awarded to defendant:
 1. All clothing, personal effects and furniture currently in her possession;
 2. Her Fleet checking account listed on her financial affidavit dated May 22, 2000 which indicates an approximate balance of $500;
 3. Her cash savings in the amount of $2,000.
(3) LIABILITIES
 A. The Plaintiff
 The financial affidavit, dated May 25, 2000, includes debts to credit union ($19,695); IRS, ($22,700); New York State Taxing Authority ($5,478); Rok Realty ($3,272). The plaintiff shall be solely responsible for these obligations and indemnify and hold harmless the defendant from any liability thereon.
 B. The Defendant
 The financial affidavit, dated May 22, 2000 includes debts for various credit cards ($32,400); IRS CT Page 11357 ($2,800); and miscellaneous debts ($4,000). The defendant shall be solely responsible for these obligations and indemnify and hold harmless the plaintiff from any liability thereon.
 The defendant shall pay the plaintiff the sum of $25,000 as her contribution toward the obligations ordered to be paid by the plaintiff. Payment shall be made when the residence is sold or the younger child of the parties reaches majority, whichever event first occurs.
 C. Counsel Fees
Each party shall pay his/her own counsel fees.
D. Fees of Guardian ad Litem/Attorney for Children
 The court, Hiller, J., previously ordered that Attorney Martha Deegan, who was guardian ad litem and attorney for the children during different periods of this proceeding, be paid fees in the amount of $12,102.50. It was left for the trial court to apportion responsibility for payment of the fees.
 It is ordered that the parties shall equally share the obligation.
 It is ordered that the plaintiff pay to Attorney Deegan payments as received by him of his Federal and State Tax refunds for the years 1998 and 1999 which shall be credited against his obligation. The plaintiff testified he expects refunds of $1,086 from New York State for tax year 1998 and approximately $1,100 for tax year 1999 from New York State and $2,163 from IRS for tax year 1999. He shall arrange with Attorney Deegan a payment schedule for the balance due her.
 The defendant shall make arrangements for payment of her share of fees directly with Attorney Deegan. A hearing will be held if they are unable to agree on a schedule.
(4) CHILD SUPPORT
CT Page 11358 The court finds that the child support guidelines computation by the defendant is accurate. The guidelines provide that the plaintiffs obligation for child support is $358 per week. The plaintiff is ordered to pay to the defendant the sum of $358 per week as child support. The payments shall commence on October 2, 2000, and weekly thereafter, in advance, and continue during his lifetime, until the death, emancipation or majority of the children, whichever first occurs, subject to the provisions of Section 46b-84
(b) of the Connecticut General Statutes.
 The plaintiff shall arrange for payments to be withheld from his weekly wages and transmitted by his employer to the defendant.
 Also, as to uninsured and unreimbursed medical expenses, the defendant shall be responsible for the first $100 per year, per child. Thereafter, the plaintiff shall be responsible for 72.5% of such expenses and the defendant for 27.5%.
 Also, for child care contributions, the plaintiff shall be responsible for 72.5% of the reasonable charges and the defendant for 27.5%.
(5) MEDICAL INSURANCE
 The plaintiff shall carry medical and dental insurance for the minor children. The children shall use medical insurance plan providers. Section 46b-84 (e) of the General Statutes shall apply.
 The defendant shall have the option of continuing her medical insurance coverage under COBRA at her sole expense. The plaintiff shall cooperate and provide her promptly with all the documentation necessary to accomplish this.
(6) LIFE INSURANCE
 The plaintiff shall carry life insurance in the amount of $40,000, or any increased amount up to $100,000 available through his union membership, if no additional premiums are required, for the benefit of his minor children. He shall designate the children as CT Page 11359 irrevocable beneficiaries for as long the plaintiff is obligated to pay child support.
 The plaintiff shall annually furnish the defendant with proof of coverage.
(7) ALIMONY
 The defendant is currently unemployed. This is partially due to her parenting responsibilities and also her anxiety over this dissolution action. The defendant has worked during the marriage and in 1999 earned approximately $26,000 working part-time.
 The defendant requires a period of adjustment post dissolution as well as some rehabilitative training in computer operations. Therefore, a term limit of period alimony is appropriate. The plaintiff shall pay to the defendant as periodic alimony the sum of $232 per week. The payments shall commence on October 2, 2000, and weekly thereafter, in advance, during the plaintiffs lifetime, until the defendant's death, remarriage or September 30, 2004, whichever event first occurs. This order is subject to the rights of the plaintiff under General Statutes Section 46b-86(b). The order is non-modifiable as to term.
 This order is based on the plaintiffs income of $101,000 which was his earnings in 1999. The plaintiff shall arrange for payments to be withheld from his weekly wages and transmitted by his employer to the defendant.
 The pendente lite orders as to alimony and child support shall remain in effect until the first weekly payment commences under these orders.
Judgment may enter accordingly.
NOVACK, JUDGE TRIAL REFEREE